OPINION. Disney, Judge: The facts are not materially disputed — except that petitioner contends that Walling and Larkin from time to time reimbursed petitioner for their proportionate part of development expenses. The evidence is only that they were debited with such proportionate part, and we have so found. With such finding, and eliminating unessentials, the situation is in substance that petitioner acquired some of its stock in consideration of certain 20-year interests in oil leases — more fully described below. That amounts of money were designated as “payment” for the stock is immaterial, since under the agreements the seller could resort only to the oil and gas interest for “payment,” accepting same for the 20-year period for the stock, whether that period produced more or less than the amount stated in dollars. The consideration for stock was clearly the oil and gas interest, not an agreement to pay stated amounts. Nor is it important that the agreements described the oil and gas runs as assigned “as security,” for on the whole agreement they were not. security, but consideration. There was no personal liability to be secured. Though the respondent calls the question one of deductibility of ordinary and necessary business expense (or, in the alternative, of deductibility of interest), plainly it is: Whose was the income from the oil and gas leases, in the percentages here involved? The test has in effect been made the same as whether the economic interest in the oil and gas is such as to require allowance of depletion, that is, whether there is a capital investment in the oil and gas in place. Anderson v. Helvering, 310 U. S. 404. Under the facts here before us, it is our opinion that the vendors, Walling and Larkin, obtained such economic interest. The language of Palmer v. Bender, 287 U. S. 551, allowing depletion to one who acquires “by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital,” describes the vendors here. Since they must perforce look to the oil and gas only, for the return of their capital, it was income derived from extraction of oil, and we think it can not be soundly denied that they had an interest in the oil in place. Distinction has been made between payment from “net profits” and “net proceeds” from oil or gas property; e. g., Helvering v. Elbe Oil Land Development Co., 303 U. S. 372; Helvering v. O'Donnell, 303 U. S. 370; Helvering v. Bankline Oil Co., 303 U. S. 362; Euleon Jock Gracey., 5 T. C. 296, citing Quintana Petroleum Co., 44 B. T. A. 624, wherein the matter was considered as one of profit sharing, though the word “net proceeds” appears in the instrument involved. A mere covenant to pay “net profits” does not convey an economic interest. Here, however, there was no mere agreement to share profits. The interests in oil and gas here involved are variously described in the agreements and the assignments executed pursuant thereto. In the contracts (as to both Walling and Larkin) it is agreed that petitioner assign as security “a portion of the net runs of all of the oil and gas produced and saved from the oil and gas leasehold estates”; also, that petitioner shall for 20 years pay 11 percent (12½ percent in case of Larkin) of petitioner’s interest “in the oil and gas runs from the leasehold estates * * * after deducting all legitimate operating and development expense * * including a charge of $10 per well as overhead. The contracts further refer to resort only to the stated percentage of petitioner’s interest “in the oil and gas runs” and provide that there shall be executed an assignment of the stated percentage of the petitioner’s interest “in the oil and gas runs,” and that any transfer of the leaseholds shall be subject to such 11 percent (or 12½ percent) interest. Each assignment, entitled “Assignment of Oil and Gas Runs,” recites the assignment of the stated percentage of petitioner’s interest “within and to the net proceeds of the oil and gas produced,” and reserves operative control of the leases to petitioner. It is thus seen that primarily there was conveyed an interest in oil and gas produced, with provision for deduction of expenses — at the least, a conveyance of net proceeds of the oil and gas produced, and not mere profits. Such conveyance has been held to carry a depletable economic interest. Hugh Hodges Drilling Co., 43 B. T. A. 1045. That case considered various leases, interests in which were conveyed for consideration in services rendered, and included instances where shares in the net proceeds from oil and gas runs were conveyed. Also, in some instances, the conveyances were described, as here, as by way of security. Thus, in one of the situations covered, the petitioner contracted to drill a well for oil or gas, and to receive for such service $84,000 out of the oil or gas out of three-fourths of the seven-eighths working interest, until $84,000 had been run to his credit; plus three-eighths vested interest in the lease; but if oil or gas was produced from the well in insufficient quantities to amount to $84,000 (out of the interest specified), the petitioner would be entitled only to the amount produced therefrom, and if none was produced, he would receive nothing. In short, as here, he was to receive (if oil was produced) whatever was produced from the designated interest less than $84,000 in value, and above that value an interest in the lease. Operating expenses were to be borne proportionately if oil or gas was produced. Here, the situation is in one respect even more clearly seen to entail only an interest in the oil or gas, for in the instant case Walling and Larkin were to receive the stated percentage, even though over the 20-year period it might amount to more than the amount stated in dollars. Another situation examined in Hugh Hodges Drilling Co. involved drilling a well for $80,000, to be paid only out of three-eighths of the seven-eighths working interest and the production of oil or gas due therefrom, with joint operation and deduction of actual operating expense. The arrangement was stated to be “as security,” and recited that payment was to be only out of the conveyed “net working interest,” after payment of expenses. A third situation in the same case involved a well drilled for which the driller was to be paid “the first $200,000.00 income derived from the sale of oil and/or gas produced from the !%6ths of the %ths working interest,” to insure which payment that amount of “income and proceeds” was assigned — all this after deduction of actual operating expenses. The driller was to control and operate until paid. All these arrangements and others not detailed here were held to convey economic interests subject to depletion. In Spalding v. United States, 97 Fed. (2d) 697; certiorari denied, 305 U. S. 644, net proceeds from oil and gas were consideration for drilling and other services. The court distinguished net profits and net proceeds, and held that a depletable economic interest was acquired for the drilling and services. It is to be noted that, as in the instant case, the contract was for a term of years. See also Caldwell Oil Corporation, 47 B. T. A. 707; affd., 141 Fed. (2d) 559. We conclude and hold that the vendors, Walling and Larkin, acquired economic interests subject to depletion and that the proceeds of such interests paid them in 1940 did not constitute income to the petitioner. Helvering v. Armstrong, 69 Fed. (2d) 377; Reynolds v. McMurray, 60 Fed. (2d) 843. Hence, the $25,646.18 is excludible from petitioner’s income. This renders it unnecessary to consider the. alternative contention that deductible interest was paid by the petitioner. Decision will be entered under Rule 50.